**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL JAMES PRATT, | No.  2:20-CV-2183-DMC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 5 and 9, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment.  See 28 U.S.C. § 636(c).  Pending before the Court are the parties' briefs on the merits, ECF Nos. 14 and 15.

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

1

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the matter will be remanded for further proceedings.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

| | |
|---|---|
| Step 1 | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |

2

Step 4    If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied;

Step 5    If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied.

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on October 26, 2017.  <u>See</u> CAR 15.[1] In the application, Plaintiff claims disability began on November 20, 2013.  <u>See id.</u>  Plaintiff's claim was initially denied.  Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on December 27, 2019, before Administrative Law Judge (ALJ) Elizabeth Watson.  In a January 21, 2020, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

> 1.  The claimant last met the insured status requirements of the Social Security Act on December 31, 2019;
>
> 2.  Through the date last insured, the claimant had the following severe impairment(s): lumbar degenerative disc disease status post-surgery and hardware failure, obesity, and diabetes mellitus;
>
> 3.  Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 4.  Through the date last insured, the claimant had the residual functional capacity to perform light work, except the claimant was limited to the following: lifting and or carrying twenty pounds occasionally and ten pounds frequently; standing and or walking for a total of four hours, and sitting for a total of about six hours in an eight-hour workday, with normal breaks; occasional climbing of ramps and stairs, and no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling;
>
> 5.  Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, through the date last insured the claimant could have performed her past relevant work and there were jobs that existed in significant numbers in the national economy that the claimant could have performed.
>
> <u>See id.</u> at 17-34.

After the Appeals Council declined review, this appeal followed.

/ / /

/ / /

/ / /

---

[1]     Citations are to the Certified Administrative Record (CAR) lodged on March 10, 2021, ECF No. 8.

### III.  DISCUSSION

In his motion for summary judgment, Plaintiff argues: (1) the ALJ improperly rejected every treating or examining physician's medical opinions concerning Plaintiff's limitations; and (2) the ALJ erred in rejecting Plaintiff's testimony as to the severity of his symptoms.

### A.    **Medical Opinions**

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not explicitly rejecting a medical opinion.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another.  See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social workers are not considered an acceptable medical source.  See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants also are not acceptable medical sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016).  Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

/ / /

The Commissioner has promulgated revised regulations concerning how ALJs must evaluate medical opinions for claims filed, as here, on or after March 27, 2017.  See 20 C.F.R. §§ 404.1520c, 416.920c.  These regulations supersede prior caselaw establishing the treating physician rule which established a hierarchy of weight to be given medical opinions depending on their source.  See id.; see also Jones v. Saul, 2021 WL 620475, at *9 (E.D. Cal. Feb. 17, 2021) ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or manifestly contrary to statute, (2) the prior judicial construction was not mandated by the governing statutory language to the exclusion of a differing agency interpretation, and (3) the [treating-physician rule] is inconsistent with the new regulation, the court concludes that the 2017 regulations effectively displace or override [prior caselaw.]").  Thus, ALJs are no longer required to "defer to or give any specific evidentiary weight to" treating physicians over medical opinions from other sources.  See Carr v. Comm'r of Soc. Sec., 2021 WL 1721692, at *7 (E.D. Cal. Apr. 30, 2021).

Under the revised regulations, the ALJ must evaluate opinions and prior administrative medical findings by considering their "persuasiveness."  See Buethe v. Comm'r of Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal, May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)). In determining how persuasive the opinion of a medical source is, an ALJ must consider the following factors:  supportability, consistency, treatment relationship, specialization, and "other factors."  See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(b), (c)(1)-(5)).  Despite a requirement to consider all factors, the ALJ's duty to articulate a rationale for each factor varies. See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(a)-(b)).

Specifically, in all cases the ALJ must at least "explain how [she] considered the supportability and consistency factors," as they are "the most important factors."  See Buethe, 2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)).  For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the opinion] will be."  See Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(1)).  "For consistency, the regulations state: '[t]he more consistent a

6

1   medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

2   medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be.'"

3   Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)).  "The ALJ is required to articulate

4   findings on the remaining factors (relationship with claimant, specialization, and 'other') only

5   when 'two or more medical opinions or prior administrative medical findings about the same

6   issue' are 'not exactly the same,' and both are 'equally well-supported [and] consistent with the

7   record.'"  Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(b)(2) & (3)).

8           At Step 4, the ALJ began by her discussion of the opinion evidence with the

9   following:

10              As for the opinion evidence, the undersigned considered all medical
                opinions and opinions from medical sources and others who have seen the

11              claimant in a professional capacity in accordance with the Regulations.
                The undersigned did not provide articulation about the evidence that is

12              inherently neither valuable nor persuasive in accordance with 20 CFR
                404.1520(c) and 416.920b(c).

13              CAR 29.

14

15   The ALJ then discussed medical opinions from the following sources: (1) Gary Martinovsky

16   M.D.; (2) Eduardo Cornejo, D.C.; (3) Randolph Rhodes, D.C.; (4) James Chau, D.C.; (5) Olivia

17   Wescott, PA; (6) Carl Shin, M.D.; (7) Richard Palmer, Ph.D.; (8) David Chow, M.D.; (9) Robert

18   Rovner, M.D.; (10) Lawrence Weil, M.D.; (11) Henry Scovern, M.D.; and (12) J. Bradus, M.D.

19   See id. at 28-32.

20           In arriving at her residual functional capacity assessment, the ALJ rejected the

21   opinions offered by Drs. Martinovsky, Cornejo, Rhodes, Chau, Shin, Chow, Rovner, and Weil.

22   See CAR 28-31.  Dr. Palmer's opinion regarding mental capacity was found to be "somewhat

23   persuasive."  Id. at 30-31.  The ALJ relied on the opinions regarding physical capacity offered by

24   agency reviewing physicians, Drs. Scovern and Bradus, which she found to be persuasive.  See

25   id. at 31-32.

26   / / /

27   / / /

28   / / /

7

1    Plaintiff challenges the ALJ's rejection of opinions from Drs. Chow, Weil,

2 Rovner, Shin, Cornejo, Rhodes, Martinovsky, and Chau.  See ECF No. 14, pgs. 8-22.  Plaintiff

3 also contends the ALJ erred by failing to evaluate opinions offered by W.J. Kevin Maher, M.D.,

4 and Saket Shah, D.O.  See id.  Dr. Maher appears to have provided treatment and/or rendered

5 opinions in connection with a worker's compensation claim.  Dr. Shah treated Plaintiff's diabetes

6 and kidney disease.

7    1.    Doctors Addressed by the ALJ

8    Opinions offered by Drs. Chow, Weil, Rovner, Shin, Cornejo, Rhodes,

9 Martinovsky, and Chau were specifically addressed in the hearing decision.

10    i.    Drs. Cornejo and Rhodes

11    As to Dr. Cornejo, the ALJ stated:

12    Eduardo Cornejo, D.C., examined the claimant in September 2014. The
   claimant was diagnosed with lumbar sprain/strain; lumbar disc
13    displacement with myelopathy; lumbar nerve root compression; and
   lumbar neuritis (Exhibit 13F/4). Mr. Cornejo opined that the claimant
14    should temporarily preclude from any repetitive bending or lifting as well
   as any work which required prolonged standing or sitting. Additionally,
15    the claimant was unable to work and remained on total temporary
   disability (Exhibit 13F/5).
16
    Mr. Cornejo's opinion is found to be not persuasive. First, this opinion
17    was rendered for the purposes of worker's compensation litigation and
   lacked an adequate function-by-function analysis for the purposes of
18    Social Security disability evaluation. Second, Mr. Cornejo's opinion is
   vague. Third, Mr. Cornejo's opinion is unsupported and inconsistent with
19    the medical record. As noted above, despite the claimant's severe
   impairments, the objective evidence supports a greater level of
20    functioning. Specifically, despite the claimant's limitations, physical
   examinations found in the medical record are consistent with the
21    assessment that the claimant is not totally disabled and able to perform
   work at less than the full range of light work (Exhibits 1F/8 and 14; 2F/19-
22    50; 3F/19, 21, 23, 27, and 38; 4F/36, 57, 119-120, 137, and 165; 6F/8, 9,
   and 10-11; 8F/15 and 19; 10F/8-9 and 103-154; and 16F/53 and 59).
23    Additionally, Mr. Cornejo's opinion is inconsistent with the claimant's
   statements regarding his activities of daily living (Exhibits 11F/2 and
24    18F/5).

25    CAR 29.

26 / / /

27 / / /

28 / / /

8

As to Dr. Rhodes, the ALJ similarly concluded:

> Dr. Rhode's opinion is found to be not persuasive. This opinion was rendered for the purposes of worker's compensation litigation and lacked an adequate function-by-function analysis for the purposes of Social Security disability evaluation. Additionally, Dr. Rhodes's opinion is unsupported and inconsistent with the medical record. The assessment that the claimant did not tolerate most activities previously required of him including standing and walking most of the time, frequently squatting, stooping, bending at the waist, reaching, and working overhead, pushing/pulling with maximum lifting requirement up to and including approximately 50 pounds without assistance is vague and generally inconsistent with the medical record. As noted above, despite the claimant's severe impairments, the objective evidence supports a greater level of functioning. Specifically, despite the claimant's limitations, physical examinations found in the medical record are consistent with the assessment that the claimant is not totally disabled and able to perform work at less than the full range of light work (Exhibits 1F/8 and 14; 2F/19-50; 3F/19, 21, 23, 27, and 38; 4F/36, 57, 119-120, 137, and 165; 6F/8, 9, and 10-11; 8F/15 and 19; 10F/8-9 and 103-154; and 16F/53 and 59). Additionally, Mr. Rhode's opinion is inconsistent with the claimant's statements regarding his activities of daily living (Exhibits 11F/2 and 18F/5).

CAR 29-30.

Regarding the ALJ's analysis for both doctors, Plaintiff argues:

> . . .Courts, however, regularly hold it is error for an ALJ to reject medical opinions on the grounds they were issued in a workers' compensation case. *See, e.g.*, *Caudel v. Saul*, no. 1:19-cv-1255-JLT, 2021 WL 973948 at *12-13 (E.D. Cal., March 16, 2021) [citing *Perez v. Astrue*, 831 F.Supp.2d 1168, 1177 (C.D. Cal. 2011); *Booth v. Barnhart*, 181 F.Supp.2d 1099, 1105-1106 (C.D. Cal. 2002)]. "Despite the differences in terminology, the ALJ has responsibility to address the findings in a workers' compensation and its 'corresponding Social Security terminology.'" (*Caudel*, 2021 WL 973948 at *12 [quoting *Ray v. Saul*, no. 2:18-cv-0561-DB, 2019 WL 3767454 at *3 (E.D. Cal., Aug. 9, 2019)]. Moreover, Dr. Cornejo and Dr. Rhode's limitations included no prolonged sitting, standing, and walking, which the ALJ had a basic duty to address directly. *See*, *Booth*, 181 F.Supp.2d at 1107-1108. Thus, the ALJ's first reason for rejecting these opinions is not legitimate.

ECF No. 14, pg. 20.

Dr. Cornejo's opinions are contained in Exhibit 13F, CAR 1752-1758.  In this report, Dr. Cornejo states that Plaintiff has suffered decreased lumbar ranges of motion, muscle weakness, abnormal dermatomal sensitivity, and other limitations.  See id. at 1755-1756. Notably, however, Dr. Cornejo only opined that Plaintiff should be temporarily precluded from any repetitive bending or lifting and work that requires prolonged sitting and standing.  See id.

9

1   Furthermore, Dr. Cornejo opined that "whether the employer could accept this patient back in

2   some sort of modified duty is pending outcome of recommended treatments." See id. at 1756.

3          Dr. Rhodes' opinions are found in Exhibit 14F, CAR 1759-1783, 1799-1828.

4   Exhibit 14F is an evaluation dated May 26, 2015.  See id. at 1759.  Exhibit 15F is a second

5   evaluation dated April 25, 2017.  See id. at 1799.  Dr. Rhodes opined that Plaintiff suffers from

6   increased pain due to his workplace injury and, as such, cannot tolerate his usual and customary

7   duties as a Service Manager.  See id. at 1792.  In support of his opinion, Dr. Rhodes suggests that

8   Plaintiff cannot tolerate previously required activities such as standing and walking most of the

9   time or pushing/pulling with a maximum weight of 50 pounds without assistance.  See id.

10         The ALJ rejected these opinions because, among other reasons, they were rendered

11  for purposes of worker's compensation and not social security disability.  The Court finds no

12  error in the ALJ's analysis.  Under the regulations, decisions by other government agencies are

13  not binding in social security cases.  See 20 C.F.R. § 404.1504 (decisions by other governmental

14  agencies about whether one is approved for workers compensation is not binding with regard to a

15  social security disability decision because the requirements are different).  Even so, as Plaintiff

16  correctly notes, despite differences in analysis and terminology, the ALJ is still required to

17  address findings rendered for purposes of a worker's compensation claims.

18         The ALJ properly did so here.  Dr. Cornejo did not document any findings or

19  render any opinions translatable in the social security context.  To the contrary, and in

20  contravention of the requirement in the social security context that a limitation be expected to be

21  continuous for a period not less than 12 months, Dr. Cornejo opined as to a temporary limitation

22  to repetitive, bending, lifting, sitting, and standing.  In outlining Dr. Cornejo's findings and

23  opinions and noting that they are not consistent with the social security framework, the ALJ

24  complied with the current regulations by explaining why the opinion was not persuasive.

25         Similarly, Dr. Rhodes did not offer any opinions which can be translated to the

26  social security context.  Dr. Rhodes opined that Plaintiff experiences increased pain and cannot,

27  as a result, perform his regular duties as a Service Manager.  Dr. Rhodes further opined that

28  Plaintiff cannot tolerate pushing/pulling a maximum weight of 50 pounds without assistance.  As

the ALJ noted, these opinions are vague and do not indicate any specific degree of limitation.  In

any event, with respect to the push/pull limitation, the ALJ's residual functional capacity

assessment limits Plaintiff to light work, which involves less exertion.[2]

ii.   Dr. Martinovsky

As to Dr. Martinovsky, the ALJ stated:

> Gary Martinovsky, M.D., examined the claimant in September 2014 in relation to a workers compensation's claim. It was noted that the claimant sustained injuries to his lower back and right foot when he lifted a table and felt acute pain in his lower back in November 2013 (Exhibit 2F/6). A physical examination revealed the claimant appeared well-developed, well-nourished, and in no acute distress. The claimant was alert and oriented with appropriate mood and pleasant affect. The claimant ambulated with a cane and an antalgic gait pattern. The claimant exhibited tenderness to palpation over the bilateral lumbar paraspinal muscles. However, there was no sciatic notch tenderness on the right, and there was no spinous process tenderness or masses palpable along the lumbar spine. The claimant exhibited normal bulk and tone in all major muscle groups of the lower extremities, with no atrophy noted. The claimant's motor strength was 5/5 and symmetric throughout the bilateral upper and lower extremities except 4+/5 on right ankle plantarflexion (Exhibit 2F/9). Dr. Martinovsky diagnosed the claimant with lumbar radiculitis (Exhibit 2F/10). Dr. Martinovsky opined that the claimant was temporarily totally disabled pending for spine surgery consultation (Id.).

> Dr. Martinovsky's opinion is found to be not persuasive. It was rendered for the purposes of worker's compensation litigation and lacked an adequate function-by-function analysis for the purposes of Social Security disability evaluation. Additionally, Dr. Martinovsky's opinion is unsupported and inconsistent with the medical record. As noted above, despite the claimant's severe impairments, the objective evidence supports a greater level of functioning. Specifically, despite the claimant's limitations, physical examinations found in the medical record are consistent with the assessment that the claimant is not totally disabled and able to perform work at less than the full range of light work (Exhibits 1F/8 and 14; 2F/19-50; 3F/19, 21, 23, 27, and 38; 4F/36, 57, 119-120, 137, and 165; 6F/8, 9, and 10-11; 8F/15 and 19; 10F/8-9 and 103-154; and 16F/53 and 59). Additionally, Dr. Martinovsky's opinion is inconsistent with the claimant's statements regarding his activities of daily living (Exhibits 11F/2 and 18F/5).

CAR 28.

/ / /

/ / /

---

[2]    "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§ 404.1567(b) and 416.967(b).

11

1         Dr. Martinovsky's opinions are contained in Exhibits 2F, CAR 378-384.  In

2   Exhibit 2F, Dr. Martinovsky opined that Plaintiff's rotation is limited; there is tenderness over the

3   bilateral lumbar paraspinal muscles, and point tenderness in the hip.  See id. at 382-383.  Dr.

4   Martinovsky diagnosed Plaintiff with Lumbar radiculitis, a condition that occurs when a nerve in

5   the lower back is injured, pinched, or compressed.  See id.  Dr. Martinovsky opined that Plaintiff

6   is temporarily totally disabled pending spine surgery consultation.  See id. at 383.

7         The Court finds that the ALJ complied with the revised regulations in considering

8   Dr. Martinovsky's opinion.  In particular, as the ALJ noted, Dr. Martinovsky documented

9   findings and rendered an ultimate opinion in the context of a worker's compensation claim, which

10  involves different standard that disability claims in the social security context.  In this regard, the

11  Court notes that Dr. Martinovsky opined that Plaintiff is totally temporarily disabled pending

12  further surgery consultation, which is not a standard in social security cases because, among other

13  reasons, the social security analysis requires a showing of a disabling condition expected to last

14  for a continuous period not less than 12 months.  Notably, as with Drs. Cornejo and Rhodes,

15  discussed above, Dr. Martinovsky did not make any findings or render any specific opinions as to

16  limitations which are translatable in the social security framework.

17               iii.     Dr. Chau

18        As to Dr. Chau, the ALJ stated:

19   James Chau, D.C., examined the claimant in July 2019. Mr. Chau
20   diagnosed the claimant with fusion of spine, lumbosacral region; fusion of
     spine, lumbar region; lumbar radiculopathy; and lumbosacral
21   radiculopathy (Exhibit 17F/7). Mr. Chau indicated that the claimant had
     not reached maximum medical improvement and therefore not ratable
22   (Id.). Mr. Chau also noted that the claimant's work stats was temporary
     totally disabled (Exhibit 17F/8).

23   Mr. Chau's opinion is found to be not persuasive. This opinion was
24   rendered for the purposes of workers compensation litigation and lacked
     an adequate function-by-function analysis for the purposes of Social
25   Security disability evaluation.

26   CAR 30.

27  / / /

28  / / /

1          Dr. Chau's findings are found in Exhibit 17F.  See CAR at 1905-1915.  Dr. Chau

2   performed his evaluation on June 25, 2019.  See id. at 1905.  In conclusion, Dr. Chau noted that

3   Plaintiff had "not reached maximum medical improvement and therefore not ratable."  See id. at

4   1911.  Dr. Chau recommended delaying Plaintiff's functional capacity evaluation until he made

5   progress with his pain.  See id.

6          As with Drs. Cornejo, Rhodes, and Martinovsky, Dr. Chau rendered opinions in

7   the context of a worker's compensation evaluation.  And like the other doctors discussed above,

8   Dr. Chau's findings and opinion are not translatable in the social security context, as the ALJ

9   noted.  More specifically, the Court agrees with the ALJ that Dr. Chau's evaluation and opinion

10   did not provide any function-by-function analysis of Plaintiff's capacity.  Instead, Dr. Chau

11   opined that Plaintiff's worker's compensation disability status cannot be rated as of the time of

12   his evaluation and that Plaintiff was temporarily disabled.  Again, the Court observes that this

13   opinion is not consistent with the requirement in social security cases that limitations be expected

14   to last in duration for a continuous period of not less than 12 months.

15                     iv.   Dr. Shin

16          As to Dr. Shin, the ALJ stated:

17   From March 2019 to October 2019, the claimant was seen at The Center
     for Interdisciplinary Spine. During this period, Olivia Wescott, PA, and
18   Carl Shin, M.D., diagnosed the claimant with chronic low back pain and
     right lower extremity pain; insomnia due to his chronic pain; and
19   right leg radiculopathy. They opined that the claimant's work status was
     permanent and stationary with permanent restrictions (Exhibit 11F/3-54).
20   In March 2019, they noted that the claimant's Oswestry Disability Index
     score was 58% indicating severe disability (Exhibit 11F/53). However,
21   they also noted in October 2019 that the claimant was able to do two hours
     of household chores a day such as cooking, cleaning dishes, and going to
22   the grocery store. The claimant also spent three hours a day spending time
     with his son, going to the park and watching television (Exhibit 11F/2).
23

24   The opinions provided by Ms. Wescott and Dr. Shin are found to be
     unpersuasive. First, it is not clear whether these opinions were adopted by
25   the claimant's subjective complaints or an actual assessment of the
     claimant's functional abilities. Second, these opinions are vague and lack
26   an adequate function-by-function analysis for the purposes of Social
     Security disability evaluation.

27          CAR 30.

28   / / /

                      13

On March 29, 2019, Dr. Shin administered a diagnostic test to measure the functional effects of Plaintiff's back pain.  See Exhibit 11F, CAR 1277.  Dr. Shin opined that Plaintiff has failed all conservative care, injections are not going to help, and Plaintiff can hardly move.  See id. at 1277.  According to the Oswestry Disability Index, Plaintiff suffers pain when walking more than a quarter mile, sitting, and walking more than ten minutes.  See id.  Dr. Shin noted, among other things, that Plaintiff states he experiences pain flares when "he moves around and has to do anything," and "can do maybe 25% of the housework and does it very slow and [in] small lots."  Id.

The Court finds the ALJ's determination appropriate because it is unclear whether these opinions are clinical findings that support the opinions, or opinions based on Plaintiff's subjective experience.  See Lester, 81 F.3d at 831.  Moreover, the record indicates that Plaintiff performs two hours of household chores a day and spends three hours a day with his son, going to the park and watching TV.  See CAR 1226.  Yet, on the other hand, Dr. Shin noted that Plaintiff is hardly able to move.  See CAR 1277.  Further, while Dr. Shin opined that Plaintiff is considered severely disabled based on the Oswestry Disability Index, the quantifying factors listed to conduct the evaluation appear to be largely based on Plaintiff's subjective complaints. See Car 1277.

> v.    Drs. Chow, Rovner, and Weil

As to Drs. Chow, Rovner, and Weil, the ALJ stated:

> In addition, the medical record revealed that David Chow, M.D., Robert Rovner, M.D., and Lawrence Weil, M.D., at multiple points in the record, indicated that the claimant either continue on temporary disability or was temporarily totally disabled (Exhibits 1F/15 and 20; 3F/21, 23, 25, 27, 29, 31, 33, 36, and 39; and 10F/14, 27, 40, 53, 65, 77, 90, 102, 113, 124, 135, 143, 150, and 157).
>
> These opinions are found to be unpersuasive. These ratings have no meaning in a Social Security disability evaluation and provide no probative value as to the claimant's functional abilities.
>
> Dr. Weil also noted that the claimant's functional abilities with medications included: the claimant was able to lift 10-15 lbs., walk 5 blocks, sit 60 minutes and stand 30 minutes. Additionally, with medication, the claimant could perform household tasks including cooking, cleaning, self-care, laundry, grocery shopping for approximately 30 minutes at a tune. Without medications, the claimant was able to lift 5

14

lbs., walk 1 block or less, sit 30 minutes and stand 15 minutes or less. Without medication, the claimant could perform household tasks including cooking, cleaning, self-care, laundry, grocery shopping for approximately less than 10 minutes at a time (Exhibit 10F/12).

This opinion is found to be unpersuasive. This opinion is unsupported and inconsistent with the medical record. As noted above, despite the claimant's severe impairments, the objective evidence supports a greater level of functioning. Specifically, despite the claimant's limitations, physical examinations found in the medical record are consistent with the assessment that the claimant is not totally disabled and able to perform work at less than the full range of light work (Exhibits 1F/8 and 14; 2F/19-50; 3F/19, 21, 23, 27, and 38; 4F/36, 57, 119-120, 137, and 165; 6F/8, 9, and 10-11; 8F/15 and 19; 10F/8-9 and 103-154; and 16F/53 and 59). Additionally, this opinion is inconsistent with the claimant's statements regarding his activities of daily living. Rather, the claimant's activities of daily living are consistent with the residual functional capacity (Exhibits 11F/2 and 18F/5).

CAR 31.

Drs. Chow, Rovner, and Weil provided opinions regarding Plaintiff's physical functional capacity. These doctors' opinions are contained sparingly throughout the record at Exhibits 1F, 3F, and 10F. All three doctors opined throughout various points in the record that Plaintiff either continue on temporary disability or was temporarily totally disabled. See id. Dr. Chow performed evaluations in March and April 2014. See Exhibit 1F, CAR 8, 14. Dr. Rovner performed Plaintiff's surgeries in August 2016. Exhibit 3F, CAR 19. Lastly, Dr. Weil treated Plaintiff from October 2017 through March 2019. See generally Exhibit 10F.

Plaintiff argues that the ALJ incorrectly cited Dr. Weil's and Dr. Chow's findings as conflicting. See ECF No. 14 at 10. Among other evidence, Plaintiff provides reports from Dr. Weil and Chow that suggest his "lumbar ranges were restricted by pain," and he experienced "decreased sensation in L5 and S1 dermatomes." See id. Plaintiff states the ALJ manufactured an inconsistency without providing evidence. See id. at 9. Concerning Dr. Rovner's findings, Plaintiff argues the ALJ limited her focus to parts of the record at Plaintiff's disadvantage. See id. Specifically, Plaintiff indicates the ALJ cited to post-surgical reports indicating Plaintiff had improved while ignoring his ongoing lower back pain resulting from fractured metal hardware used to fuse Plaintiff's spine. See id. at 11.

/ / /

15

1    The Court finds no error in the ALJ's evaluation of Drs. Chow and Rovner.  As the

2    ALJ noted, these doctors opined throughout the record that Plaintiff was temporarily disabled, which

3    contravenes the temporal requirement in social cases that limitations be expected to last a continuous

4    duration of not less than 12 months.  Neither Dr. Chow nor Dr. Rovner offered specific function-by-

5    function assessments which could be relevant in the social security context.  The Court also agrees

6    with the ALJ that Dr. Weil's various assessments of temporary disability are not entitled to weight.

7    Unlike Drs. Chow and Rovner, Dr. Weil rendered specific function-by-function

8    assessments, which the ALJ specifically considered and rejected as inconsistent with the other

9    medical evidence and Plaintiff's daily activities.  Though these are specific and legitimate reasons, the

10   ALJ has not supported her analysis with a discussion of the evidence she cites in the context of Dr.

11   Weil's opinions.  The ALJ cites in a conclusory fashion to a host of exhibits she states support her

12   conclusion but does not specifically discuss any of that evidence or explain how it undermines Dr.

13   Weil's conclusions.  On this record, the Court can only guess as to what the support for the ALJ's

14   analysis might be or why the ALJ reached the conclusion she did.

15   The Court finds that the matter should be remanded to allow the Commissioner to

16   further consider Dr. Weil's opinions.

17        2.      Doctors Not Addresses by the ALJ

18   Plaintiff argues the ALJ erred by failing to address records and opinions from Drs.

19   Maher and Shah.

20        i.      Dr. Maher

21   Plaintiff argues the ALJ erred by failing to address Dr. Maher's opinions.  Plaintiff

22   offers the following summary of Dr. Maher's treatment and opinions:

23        After his November 20, 2013 workplace injury, Plaintiff first
           treated with Dr. Maher, an occupational medicine doctor at Kaiser
24        Permanente in Richmond, California. *See*, AR 363-373. On January 23,
           2014, Dr. Maher examined Plaintiff and found that despite conservative
25        treatment, including physical therapy, over the previous 9 weeks,
           Plaintiff's pain and functioning had not improved. AR 371-373. Dr. Maher
26        requested Plaintiff transfer to a pain management specialist for continuing
           care. AR 373. Objectively, Dr. Maher reported Plaintiff was "very tender"
27        over the right sacroiliac joint and lumbar region; his straight leg raise test
           was positive; avoided use of his right leg when standing; and appeared in
28        mild distress changing positions. AR 371. Dr. Maher concluded Plaintiff

16

1
2
3
4
5
6

> could not perform modified work duties, placed him off work, and
> instructed him to avoid prolong[ed] sitting and use a cane or back support
> as needed. *Id.* Dr. Maher's earlier examinations also found Plaintiff
> grimacing in pain, with the same objective findings, and advised Plaintiff
> required modified work duties that precluded any bending at the waist, any
> twisting of the torso, lifting no more than 10 pounds, and he needed to
> alternate between sitting, standing, and walking every 15 to 20 minutes.
> AR 366; *see, also*, AR 363.
>
> ECF No. 14, pgs. 17-18.

7
8
9
10
11

Dr. Maher's report is contained in the record at Exhibit 1F.  <u>See</u> CAR  363-373.  Dr. Maher examined Plaintiff after his workplace injury on November 20, 2013.  <u>See id.</u>  On January 23, 2014, Dr. Maher examined Plaintiff again and concluded that, despite conservative treatment over nine weeks, Plaintiff's overall functioning had not improved.  <u>See id.</u> at 371-373.  Dr. Maher concluded Plaintiff could not perform even modified work duties.  <u>See id.</u> at 371.

12
13
14
15
16
17

Though the ALJ's hearing decision references Exhibit 1F, the ALJ does not provide any specific analysis of opinions offered by Dr. Maher.  The ALJ's opinion is devoid of any mention as to Dr. Maher's report.  Whether or not Dr. Maher's opinions have probative value, the ALJ must at a minimum acknowledge Dr. Maher's report.  <u>See</u> Garrison v. Colvin, 759 F. 3d 995, 1012-1013 (holding the ALJ errs when rejecting a medical opinion or assigning it little weight while doing nothing more than ignoring it).

18
19
20
21
22
23
24
25
26
27
28

At the outset of the ALJ's analysis of the medical opinions, the ALJ stated: "The undersigned did not provide articulation about the evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520(c) and 416.920b(c)."  CAR 29.  These regulations do not provide, however, that the ALJ may ignore medical opinions.  Section 404.1520(c) discusses the requirement that a claimant impairment be severe.  Section 416.920b(c) discusses evidence which is inherently neither valuable nor persuasive, such as decisions by other government agencies, findings by disability examiners made at a previous level of adjudication, and statements on issues reserved to the Commissioner.  Dr. Maher's opinions do not fall into any of these categories.  To the contrary, Dr. Maher appears to have rendered opinions, albeit in the context of a worker's compensation claim, which are directly translatable to the social security context.  Specifically, Dr. Maher opined as to function-by-function limitations which could be

1     applicable in this case.

2            To the extent the ALJ relies on section 416.920b(c)(2) regarding findings by

3     disability examiners, the Court finds it curious that the ALJ would specifically discount the

4     opinions of other doctors who rendered opinion in the worker's compensation context but say

5     nothing about the opinions of Dr. Maher which were also rendered in the worker's compensation

6     context.  The concern is compounded because Dr. Maher rendered opinions on a function-by-

7     function basis relevant in the social security framework.

8            The Court finds that the matter should be remanded to allow the Commissioner to

9     properly consider Dr. Maher's opinions.

10                         ii.     Dr. Shah

11           As to Dr. Shah, the Plaintiff contends:

12           After Dr. Rovner, the ALJ cited six pages from primary care doctor
       Saket Shah, D.O. at Stanford Healthcare, who treated Plaintiff for his diabetes
13     and kidney disease over many years. AR 31 [citing Exh. 4F/36, 57, 119-120,
       137, 165; Exh. 8F/15, 19 at AR 507, 528, 590-591, 608, 636, 889, 893]. Since
14     Dr. Shah did not treat Plaintiff's chronic back pain, it is unclear the reason it
       relates to Dr. Weil's opinions, as the ALJ did not explain the relevance.
15     However, the ALJ's selective citations ignores the reports from Dr. Shah that
       reference his general observations of Plaintiff's debilitating pain. *See*, AR 524
16     [significant discomfort], 527 [antalgic gait, using cane], 573 [tingling/
       numbness in feet, antalgic gait], 590 [ongoing back pain], 602 [neuropathy
17     secondary to lumbar spine], 607-608 [exercise limited by back pain, sensory
       deficit in right foot], 636 [antalgic gait], 887-889 [loss of sensation in foot,
18     back pain and fatigue]; "[s]low movement, difficulty sitting up due to back
       pain"], 893 [same]. It was unreasonable for the ALJ to find Dr. Shah's
19     evidence is inconsistent with Dr. Weil's opinions.

20           ECF No. 14, pg. 12.

21           Dr. Shah treated Plaintiff for diabetes and kidney disease over many years.  <u>See</u>

22     Exhibit 4F, CAR 507; Exhibit 8F, CAR 1019.  On February 24, 2015, Dr. Shah diagnosed

23     Plaintiff with "worsening hyperglycemia, uncontrolled type 2 diabetes with renal complications,

24     slightly borderline hypertension, and class 1 obesity."  <u>See</u> <u>id.</u>  The ALJ cited these opinions

25     generally, with no specific reference other than various citations.

26     / / /

27     / / /

28     / / /

1     Plaintiff argues, "[s]ince Dr. Shah did not treat Plaintiff's chronic back pain, it is

2  unclear the reason it related to Dr. Weil's opinions, as the ALJ did not explain the relevance."

3  See ECF No. 14 at 12.  This argument is persuasive.  As noted, the ALJ may reject a contradicted

4  opinion of a treating or examining professional only for "specific and legitimate" reasons

5  supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the

6  Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical

7  evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v.

8  Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  The ALJ failed to do so here.  Without specific

9  facts set forth by the ALJ, the Court cannot discern why Dr. Shah's opinions contradict Dr.

10  Weil's.

11     Further, as with Dr. Maher discussed above, the ALJ's citation to 20 C.F.R. §§

12  404.1520(c) and 416.920b(c) does not render the ALJ's analysis sufficient.  The Court finds that

13  the matter should be remanded to allow the Commissioner to properly consider Dr. Shah's

14  opinions.

15        **B.**     **Plaintiff's Statements and Testimony**

16     The Commissioner determines the weight to be given to a claimant's own

17  statements and testimony, and the court defers to the Commissioner's discretion if the

18  Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94

19  F.3d 520, 522 (9th Cir. 1996).  An explicit finding must be supported by specific, cogent reasons.

20  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.

21  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify

22  what testimony is not afforded weight and what evidence undermines the testimony.  See id.

23  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's

24  reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also

25  Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue,

26  504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

27  / / /

28  / / /

1       If there is objective medical evidence of an underlying impairment, the

2   Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

3   because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

4   341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

11       The Commissioner may, however, consider the nature of the symptoms alleged,

12   including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

13   947 F.2d at 345-47.  In weighing a claimant's statements and testimony, the Commissioner may

14   also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other

15   inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to

16   follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and

17   (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See

18   Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

19   claimant cooperated during physical examinations or provided conflicting statements concerning

20   drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

21   claimant testifies as to symptoms greater than would normally be produced by a given

22   impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

23   Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

24       Regarding reliance on a claimant's daily activities to discount testimony of

25   disabling pain, the Social Security Act does not require that disability claimants be utterly

26   incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has

27   repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . .

28   does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v.

1  Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th

2  Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a

3  claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic

4  restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the

5  claimant was entitled to benefits based on constant leg and back pain despite the claimant's

6  ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home

7  activities are not easily transferable to what may be the more grueling environment of the

8  workplace, where it might be impossible to periodically rest or take medication").   Daily

9  activities must be such that they show that the claimant is ". . .able to spend a substantial part of

10 his day engaged in pursuits involving the performance of physical functions that are transferable

11 to a work setting." Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard

12 before relying on daily activities to discount a claimant's pain testimony.  See Burch v. Barnhart,

13 400 F.3d 676, 681 (9th Cir. 2005).

14          At Step 4, the ALJ considered Plaintiff's statements and testimony in determining

15 his residual functional capacity.  The ALJ provided the following summary of Plaintiff's

16 statements and testimony and her conclusions:

17          The claimant alleged that he is unable to work due to his back injury and
           sciatica (Exhibits 2E/2, 13E/1-10, and Hearing Testimony). The claimant
18         testified that he had to lie down due to right leg pain and right foot pain.
           The claimant reported that his condition prevents him from
19         performing normal activities and working a full time job during the period
           of consideration. He indicated that due to the severity of his condition, he
20         is unable to maintain employment and is unable to sustain work activity
           during the period of consideration.
21
           However, despite the claimant's alleged impairments, the claimant's
22         statements regarding his activities of daily living are fairly strong. The
           claimant reported that he is able to care for his personal hygiene
23         independently, prepare meals, and perform household chores.
           Additionally, the claimant indicated that he is able to care for his son.
24         Furthermore, the claimant is able to operate a motor vehicle. He is also
           able to go shopping for groceries as needed (Exhibits 11F/2, 18F/5
25         and Hearing Testimony). The performance of these activities is in direct
           contrast to his allegations, and rather, is generally consistent with the
26         residual functional capacity in this case. Moreover, as discussed in greater
           detail below, the medical record appears to support a level of function
27         greater than one alleged by claimant.

28 / / /

21

1

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

2

3

4

CAR 20.

5

6   The ALJ then set forth a detailed and exhaustive survey of the longitudinal medical record, which

7   the Court does not repeat here.  See id. at 20-27.

8           The ALJ offered the following rationale for rejecting Plaintiff's statements and

9   testimony:

10

Overall, the medical record supports the functional limitations detailed in the residual functional capacity. Given the claimant's lumbar degenerative disc disease status pos- surgery and hardware failure, obesity, and diabetes mellitus, the residual functional capacity appropriately limits the claimant to less than the full range of light work with additional postural limitations. However, the record also raises some concerns regarding the claimant's allegations regarding the intensity, persistence and limiting effect of those symptoms.

11

12

13

14

As noted above, there are several reasons why the claimant's allegations of debilitating symptoms are not entirely consistent with the medical evidence. First, the claimant's assertions appear out of proportion and not as debilitating as alleged. As noted above, although the claimant is limited by his lumbar degenerative disc disease status post-surgery and hardware failure, obesity, and diabetes mellitus, the claimant's severe impairments are adequately accounted for in the residual functional capacity. Specifically, the residual functional capacity appropriately limits the claimant to less than the full range of light work with additional postural limitations. There is nothing in the medical evidence of record to warrant a more restrictive residual functional capacity. The objective evidence, in the form of physical/psychiatric examinations in the medical record appears to suggest a level of function greater than one alleged by the claimant. Outside of the claimant's severe back issues and obesity, physical examinations found in the medical record revealed fairly normal findings. Physical examinations consistently noted that the claimant's lungs were clear to auscultation bilaterally with no wheezes or rales. The claimant's lower extremities often exhibited no edema. The claimant consistently exhibited no cranial nerve deficit. The claimant's motor strength of various muscle groups tested was still often fairly strong, consistently remaining around 4+/5 to 5/5. Thus, despite the claimant's severe back issues, the claimant's motor strength supports an assessment that the claimant could perform work at the less than full range of light. Additionally, the claimant was able to consistently heel, toe, and tandem walk. Furthermore, the claimant was consistently described as oriented, well-nourished, well-developed, and in no acute distress (Exhibits 1F/8 and 14; 2F/19-50; 3F/19, 21, 23, 27, and 38; 4F/36, 57, 119-120, 137, and 165; 6F/8, 9, and 10-11; 8F/15 and 19; 10F/8-9 and

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22

103-154; and 16F/53 and 59). These findings support the assessment that the claimant is not totally disabled. Rather, despite the claimant's severe impairments, these findings show that the claimant is appropriately limited to less than the full range of light work.

In addition, psychiatric examinations found throughout the medical record support the assessment that the claimant had no limitations in his mental functioning. Psychiatric examinations consistently showed that the claimant exhibited normal mood, affect, behavior, judgment, and thought content (Exhibits 4F/119-120, 137, and 165; 6F/8 and 10-11; and 8F/15). These findings further support the residual functional capacity.

Second, the claimant's statements regarding his activities of daily living suggest a level of function inconsistent with his allegations. Despite his alleged impairments, the claimant reported that he is able to care for his personal hygiene independently, prepare meals, and perform household chores. Additionally, the claimant indicated that he is able to care for his son. Furthermore, the claimant is able to operate a motor vehicle. He is also able to go shopping for groceries as needed (Exhibits 11F/2, 18F/5, and Hearing Testimony). This is strong evidence that the claimant's impairments are not as debilitating as he alleges. For these reasons, the claimant's allegations concerning the severity of his symptoms are not entirely consistent with the evidence and any limitations imposed by the claimant's impairments were accounted for sufficiently in the residual functional capacity.

CAR 27-28.

Here, the ALJ cited two reasons for discounting Plaintiff's statements and testimony.  First, the ALJ cited inconsistency with the medical record.  Second, the ALJ cited inconsistent with Plaintiff's activities of daily living.  Each reason alone is clear and convincing if supported by the record and proper analysis.

1.      The Medical Record

As explained above, general findings are insufficient.  See Lester, 81 F.3d at 834. The ALJ must make specific findings which identify what testimony is not afforded weight and what evidence undermines the testimony.  See id.  Insofar as the ALJ's cites the medical record, the ALJ met her burden.  Specifically, the ALJ noted the following as inconsistent with Plaintiff's allegations of disabling back pain: (1) lack of lower extremity edema; (2) lack of cranial nerve deficit; and (3) consistent and strong motor strength findings.

/ / /

/ / /

/ / /

23

1              2.        Activities of Daily Living

2              The ALJ listed the following activities which were found to undermine Plaintiff's

3   statements and testimony: (1) care for his personal hygiene independently; (2) prepare meals; (3)

4   perform household chores; (4) care for his son; (5) operate a motor vehicle; and (6) go shopping

5   for groceries.  See CAR 28.  Plaintiff, however, has testified these activities are limited, primarily

6   due to back and foot pain.  For example, in a function report completed December 2, 2019,

7   contained in the record at Exhibit 18F, CAR 1919, Plaintiff stated he can wash his hair unassisted

8   and maintains independent grooming and dressing, but uses a therapy device to get his socks on

9   and no longer ties his shoes.  See id.  Furthermore, he can go to the bathroom but experiences

10  numbness and pain while doing so.  See id.  Plaintiff stated he can drive, but only to the store, and

11  shop, but only briefly.  See id.  As far as meal preparation, Plaintiff stated he can cook, but only

12  in segments, with a maximum of ten minutes standing.  See id.  Regarding lifting objects,

13  Plaintiff stated he can do so if he does not have to bend down and use both hands.  See id.

14  Plaintiff also alleged he can take his son to the park, but only if he sits on the bench the whole

15  time.  See id.

16             The Court finds that the ALJ's reliance on Plaintiff's limited daily activities is

17  misplaced.  Plaintiff's statements and testimony reflect daily activities that are limited in nature.

18  The mere fact that Plaintiff has carried out these activities does not detract from his credibility as

19  to his overall disability.  See Orn, 495 F. 3d at 639; see also Gallant, 753 F.2d at 1488 (discussing

20  claimant's entitlement to benefits based on constant leg and back pain despite his ability to cook

21  meals and wash dishes).  The ALJ has not sufficiently explained how these limited daily activities

22  translate into sustaining full-time competitive work.  See Fair, 885 F. 2d at 603.

23             Though the ALJ's analysis of Plaintiff's statements and testimony is sufficient to

24  the extent the ALJ properly cited inconsistency with the medication record, discussed above,

25  given that the matter will be remanded to allow further consideration of various medical opinions,

26  the Commissioner should reassess whether citation to Plaintiff's limited daily activities is

27  appropriate in this case.

28  / / /

1

## IV.  CONCLUSION

2          For the foregoing reasons, this matter will be remanded under sentence four of 42

3   U.S.C. § 405(g) for further development of the record and/or further findings addressing the

4   deficiencies noted above.

5          Accordingly, IT IS HEREBY ORDERED that:

6          1.     Plaintiff's motion for summary judgment, ECF No. 14, is granted;

7          2.     Defendant's motion for summary judgment, ECF No. 15, is denied;

8          3.     The Commissioner's final decision is reversed and this matter is remanded

9   for further proceedings consistent with this order; and

10         4.     The Clerk of the Court is directed to enter judgment and close this file.

11

12   Dated:  January 5, 2022

13                                         _____
                                            DENNIS M. COTA
14                                          UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28